JUSTICE FIRST
Jenny C. Huang, SBN 223596
180 Grand Avenue, Suite 1300
Oakland, CA 94612
Telephone: (510) 628-0695
E-mail: jhuang@justicefirst.net

STEPHEN D. SCHEAR, SBN 83806
Law Office of Stephen Schear
2831 Telegraph Avenue
Oakland, CA 94609
Telephone: (510) 832-3500
E-mail: steveschear@gmail.com

Attorneys for Plaintiff Ryan Kime, M.D.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN KIME, M.D.,<br><br>    Plaintiff,<br><br>    vs.<br><br>ADVENTIST HEALTH CLEARLAKE HOSPITAL, INC., THE MEDICAL STAFF OF ST. HELENA HOSPITAL CLEARLAKE, DR. JOHN WEEKS, AND DOES 1-20, inclusive,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Ryan Kime, M.D., hereby alleges as follows:

**INTRODUCTION**

1. Plaintiff Ryan Kime, M.D., is a board-certified emergency medicine physician who has practiced in that field for 12 years. From November 12, 2012 until August 11, 2015, Dr. Kime had unrestricted hospital privileges at Defendant Adventist Health Clearlake Hospital, Inc. ("Adventist Clearlake" or "the Hospital".) From 2013-2015, Dr. Kime observed recurring problems in the Hospital's practices and protocol that posed a serious threat to patient safety. From 2013-2015, Dr. Kime repeatedly complained about possible violations of the federal Emergency Medical Treatment and Active Labor Act ("EMTALA") and his concerns for patient safety.

2. In July, 2015, Dr. Kime reported to Hospital managers two cases where patients were endangered because of the failure of the Hospital to transfer patients who needed a higher level of care than it could provide. On August 7, 2015, Dr. Kime reported and objected to the Hospital's failure to employ adequate procedures in response to a 4-5 hour power failure, which left the Emergency Department without the capacity to do radiology or laboratory studies; without access to electronic medical records, and without the capability to communicate by way of the hospital's telephone system. The hospital retaliated against Dr. Kime by suspending him, without offering him an opportunity to defend himself, in violation of the hospital bylaws and California law. It further retaliated against him by terminating his hospital privileges, again without a hearing or an opportunity to defend himself, by falsely claiming that he had resigned from the medical staff. Dr. Kime brings this action for injunctive relief and monetary damages pursuant to the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and California Health and Safety Code section 1278.5.

## PARTIES[1]

3. Plaintiff Ryan Kime, M.D., is, and at all times mentioned herein was, a physician licensed to practice medicine in the State of California.

4. Defendant Adventist Health Clearlake Hospital, Inc. is a California corporation with its headquarters located in Lake County at Clearlake, California.

5. Defendant Medical Staff of Saint Helena Clearlake Hospital is an unincorporated association of physicians who are members of the medical staff of Defendant Adventist Health Clearlake Hospital, Inc.

6. Defendant Dr. John Weeks is an individual who was the Chief of Staff of the Medical Staff of Saint Helena Clearlake Hospital at times pertinent to this lawsuit, including August and September 2015.

---

[1] The titles of sections in the factual allegations and the titles of the counts are provided for ease of reference and are not intended to constitute substantive elements of the factual or legal allegations contained herein.

7. In doing the acts alleged in this Complaint, each of the defendants acted as the agent of the other defendants.

8. Plaintiff does not know the true names or capacities, whether individual, partners or corporate of the Defendants sued herein as Does 1-20, inclusive, and each of them, and for that reason those Defendants are sued under fictitious names. Plaintiff will ask leave of the Court to amend the pleadings herein to show the true names and capacities of said Defendants when they are ascertained.

## JURISDICTION

9. This court has subject matter jurisdiction over this action under the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

10. At all relevant times, Defendant Adventist Clearlake was a hospital with an emergency department subject to the requirements of the EMTALA.

11. Venue in this district is proper based on the fact that the claims all arose in this district and within Lake County, California.

## STATEMENT OF FACTS

12. Dr. Kime is a well-qualified and Board-Certified emergency room physician with 12 years of experience providing emergency medical services. He is licensed to practice in California, Arizona, and Washington.

13. He received hospital privileges from Adventist Clearlake on November 12, 2012. He commenced working at the Hospital in its emergency department on January 1, 2013.

14. During the time that Dr. Kime was working at Adventist Clearlake, he was employed by Acute Medical Providers, Inc., (AMP) a California medical group.

15. Adventist Clearlake is a relatively small rural hospital with limited services. As a result, the Hospital had a practice and protocol of transferring patients that required a higher level of care than the Hospital could provide. Adequate and effective transfer services, systems and protocols were therefore very important to the safety of the Hospital's patients. During his service at the Hospital, Dr. Kime observed problems with the quality of care being provided to

patients, including but not limited to problems with the capacity of the Adventist hospital system to transfer Clearlake patients who needed a higher level of care.

16.     In 2013, Dr. Kime's first year at the Hospital, there was a recurring problem with emergency physicians facing difficulties in having patients transferred to a needed higher level of care.  Specifically, Dr. Kime had recurring problems with hospitalists at the Adventist hospital Saint Helena Napa Valley Hospital who refused to accept transfers of patients.  This problem was known to the Hospital administration and to the Medical Director of the Emergency Department at the Hospital.

17.     In 2013, Dr. Kime reported problems with the performance of a nurse who had failed to do orders on four patients, missing medication orders and other urgent orders, and who was not safely caring for patients.  Dr. Kime also reported that the Hospital had insufficient backup resources for occasions when the hospital experienced a higher than normal number of patients with serious problems, and that it had no plan for addressing high volume, high acuity situations.  He also reported that the hospital had inadequate procedures to address occasions when the computers were not working, jeopardizing patient care.  He also reported that there were problems with the triage of patients, and that inadequate or inappropriate care was being provided to patients.  He also reported that there were problems in the manner in which the Hospital's transfer center was making arrangements for transfers of critically ill patients.

18.     In 2014, Dr. Kime continued to encounter serious problems with transfers of ill patients to a higher level of care and reported those problems to the Hospital.  In addition, Dr. Kime reported to his supervisor a significant problem with a disruptive physician who had significant quality issues that were detrimentally affecting the delivery of patient care.

19.     Primarily due to his concern about practicing in a hospital that was providing substandard care, Dr. Kime resigned his employment position with AMP on May 27, 2015.  On May 31, 2015, Dr. Kime received an email confirming that his resignation had been accepted. Under the terms of his employment contract, Dr. Kime was required to give 90 days notice before stopping work.  He continued to work at the Hospital to honor that obligation.  He did not resign or surrender his hospital privileges.

20. In 2015, the protocol of the Hospital was to transfer those patients needing a higher level of care to Saint Helena Napa Valley Hospital. However, on July 7, 2015, a hospitalist physician at Saint Helena Napa Valley Hospital refused to accept the transfer of a patient who needed a higher level of care, potentially endangering the patient's life. As result of the hospitalist's action, transfer of the patient was delayed four to five hours until transfer to another hospital could be arranged. Dr. Kime reported to Dr. Kathie Calloway, the Medical Director of the Emergency Department, about how Adventist's inability to provide prompt appropriate medical care had jeopardized patient safety.

21. A similar case occurred on July 17, 2015, when the same hospitalist at Saint Helena Napa Valley again refused a transfer of a critically ill patient, again potentially endangering the patient and causing a four to five hour delay in the transfer. Dr. Kime again reported the patient safety problem, this time to both Dr. Calloway and to Dr. Marc Shapiro, the Chief Medical Officer of Adventist Clearlake. When he reported the safety violations, he alleged possible EMTALA violations. Dr. Calloway criticized Dr. Kime for raising the issue of EMTALA violations.

22. On August 7, 2015, there was a power failure at Adventist Clearlake, which rendered the Hospital incapable of providing care for emergency patients. The power failure made it impossible for emergency physicians to obtain radiology studies or laboratory results, the hospital's internal phone system was not functioning and physicians could not access a patient's electronic medical records. Dr. Kime was on duty at the time as the only physician in the emergency department. He quickly recognized that the Hospital was unable to provide adequate medical care to emergency patients, and repeatedly urged the House Supervisor, Diane Carpenter, to put the hospital on "diversion", so that emergency patients would be taken to other hospitals. Dr. Kime also requested, and sought to implement, adequate procedures to protect patient safety during the power failure. Dr. Kime attempted to reach the Chair of the Emergency Department, Dr. Rodney Look, and the Chief Medical Officer, Dr. Marc Shapiro, but they did not return the calls. After that, Dr. Kime was twice approached by the Hospital's Chief Financial Officer, Carlton Jacobson, who asked why Dr. Kime wanted the hospital put on diversion. Dr.

Kime reported the risks to patient care from the power failure and the need for diversion. Mr. Jacobson then walked off and the hospital administration did not put the hospital on diversion and failed to implement adequate procedures to ensure patient safety during the power failure.

23. On August 13, 2015, while on vacation, Dr. Kime received an email from Dr. Rodney Look, who was the President of Acute Medical Providers, Inc. ("AMP"), Dr. Kime's employer. Dr. Look's email notified Dr. Kime that he had been suspended by Adventist Clearlake, that he was therefore in violation of the his contract with AMP, and that his contract with AMP had therefore been terminated.

24. On August 17, 2015, Dr. Kime received a letter from Defendant Dr. John Weeks, Chief of the Medical Staff, notifying him that he had been temporarily suspended based on complaints of unprofessional behavior and an allegation of patient abandonment. No details were given about the allegations, and Dr. Kime was given no opportunity to defend himself from the suspension. When he later obtained the medical records of the case in which he purportedly "abandoned" a patient, the records provided no proof of the claim of abandonment, which was a fabrication by Defendants.

25. The Medical Staff's action of suspending Dr. Kime without giving him an opportunity to defend himself in front of the Medical Staff's Medical Executive Committee (MEC) violated the hospital's bylaws. Under bylaw 6.61, subd. (a), the hospital may only suspend a member of the medical staff when a physician's conduct poses an "imminent danger" to patients. Nothing Dr. Kime had done posed an imminent danger to patients. Secondly, bylaw 6.62 required that Dr. Kime be allowed to defend himself before a meeting of the MEC within 7 days of a suspension. Dr. Kime was never given any opportunity to defend himself.

26. Dr. Kime's suspension also violated California law. Under California Business & Professions Code § 809.5, a hospital can only suspend a physician if the failure to do so would risk imminent harm to patients. Under the same statute, a physician who is suspended must be offered a formal quasi-judicial hearing pursuant to Business & Professions Code § 809 et seq.

27. On August 19, 2015, Dr. Kime talked to Defendant Dr. Weeks by phone. In the course of that conversation, Dr. Kime informed Dr. Weeks that he had resigned from the medical

group AMP on May 27, 2015. Dr. Weeks asked for a copy of the resignation letter, so he could take it to an upcoming MEC meeting scheduled for August 24, 2015. Dr. Kime complied with that request on August 19, 2015.

28. On September 2, 2015, Dr. Kime's counsel wrote to Dr. Weeks and to the Chief Executive Officer of the Hospital, David Santos, describing the hospital's violations of its bylaws and demanding that Dr. Kime's suspension be withdrawn.

29. On September 10, 2015, an attorney for Defendants Adventist Clearlake and its Medical Staff sent a letter falsely claiming that Dr. Kime had resigned from the medical staff. He made that claim based on the fact that Dr. Kime had complied with Dr. Week's request that Dr. Kime send him the May 27, 2015 letter of resignation from AMP, his employer. Dr. Kime never resigned from the medical staff. He was terminated from the medical staff, without being offered a hearing under Business & Professions Code § 809 et seq. using the false claim that he had resigned.

30. Adventist Clearlake subsequently filed a false report with the Medical Board of California and the National Practitioner Data Bank claiming that Dr. Kime had resigned while under investigation by the Medical Staff, even though Dr. Kime's resignation letter had been dated May 27, 2015, and it was only a resignation from his employment, and not from the medical staff.

31. Adventist Hospital's actions in illegally suspending Dr. Kime, terminating his privileges through a false representation that he had resigned from the medical staff, and failing to offer him a hearing and fair procedure as required by California law, were taken in retaliation for Dr. Kime's reports of patient safety problems, including but not limited to his reports in July, 2015 and August 7, 2015, described above.

32. Defendants' false accusations, illegal suspension, and termination of privileges described above caused Dr. Kime to be terminated from his employment from AMP and has severely damaged his reputation and his earning capacity. Before Defendants suspended and terminated Dr. Kime, no hospital had ever refused to give to him privileges. Defendants' actions

have caused many hospitals to refuse him privileges, causing him substantial economic damages, damage to his record and reputation, and significant emotional distress.

33. Defendants' retaliatory actions and harassment have caused Dr. Kime to suffer emotional distress, damage to his reputation and record, other general damages, loss of earning capacity and substantial economic damages.

34. The retaliatory actions against Kime were taken by managing agents and officers of the Hospital and the medical staff of the Hospital.

35. Defendants' conduct was malicious and despicable because Defendants and their managing agents committed criminal acts which were intended to, and did, injure Dr. Kime. The conduct of Defendants was also fraudulent, because they knowingly and falsely claimed that Dr. Kime had resigned from the medical staff, when he had not, and knowingly and falsely represented that he represented a risk to patient care, when he was not. Defendants' conduct was also oppressive, because it subjected Dr. Kime to cruel and unjust hardship by subjecting him to substantial emotional distress, including but not limited to substantial anxiety and stress, substantial economic damage, and permanent damage to his record, because of his reports of patient safety problems, in conscious disregard of his rights. Dr. Kime is therefore entitled to an award of punitive damages against Defendants for their retaliatory conduct.

## FIRST COUNT

### (VIOLATION OF 42 U.S.C. § 1395dd (EMTALA))

### (Against Defendant Adventist Clearlake)

36. Plaintiff realleges and incorporates by reference every allegation contained in paragraphs 1 through 35 set forth above. This Count is alleged against Defendant Adventist Clearlake only.

37. Defendant Adventist Clearlake is subject to the requirements of the federal Emergency Medical Treatment and Active Labor Act ("EMTALA") because it is a participating hospital under Medicare that has an emergency department.

38. From 2013-2015, Defendant Adventist Clearlake violated EMTALA with inadequate procedures to address high volume and/or high acuity situations, thereby endangering

the safety of patients.  The Hospital was also incapable of adequately responding to computer and/or power failures which made it impossible for the emergency room to adequately screen and stabilize patients pursuant to EMTALA.

39. From 2013-2015, the Hospital repeatedly violated EMTALA by engaging in practices and protocols that substantially delayed the transfer of patients to a higher level of care.

40. From 2013-2015, Dr. Kime repeatedly complained about the Hospital's dangerous practices and the substantial threat to patient safety.

41. The Hospital failed to take appropriate action in response to Dr. Kime's expressed concerns and further threatened the safety of patients.  Instead, it retaliated against Dr. Kime for his complaints.

42. In acting as described above, Defendant Adventist Clearlake willfully violated 42 U.S.C. § 1395dd.

WHEREFORE, Plaintiff prays for judgment and damages against Defendant Adventist Clearlake as set forth below.

## SECOND COUNT

### (RETALIATION IN VIOLATION OF 42 U.S.C. § 1395dd (EMTALA))

### (Against Defendant Adventist Clearlake)

43. Plaintiff realleges and incorporates by reference every allegation contained in paragraphs 1 through 42 set forth above.  This Count is alleged against Defendant Adventist Clearlake only.

44. EMTALA prohibits hospitals from taking adverse action against physicians on the medical staff who report an EMTALA violation against the hospital.

45. Dr. Kime repeatedly reported and complained about the Hospital's failure to comply with EMTALA and the resulting danger to patient safety.

46. The Hospital's actions including, but not limited to, the suspension of Dr. Kime's privileges without offering him a hearing and fair procedure, the termination of his privileges without offering him a hearing and fair procedure, and false reports to the Medical Board of

California and the National Practitioner Data Bank, were all taken in retaliation for Dr. Kime's reports of EMTALA violations and endangerment of patient safety.

47. In acting as described above, Defendant Adventist Clearlake willfully violated 42 U.S.C. § 1395dd.

48. As a proximate result of the Hospital's conduct, Dr. Kime suffered lost earnings, severe damage to his reputation, loss of earning capacity, substantial emotional distress, and other general damages.

49. In retaliating against Dr. Kime, Adventist Clearlake acted despicably, willfully, knowingly, intentionally, maliciously, oppressively, or with conscious, wanton, or reckless disregard for his rights. Dr. Kime is therefore entitled to an award of punitive damages against Defendant Adventist Clearlake for retaliatory conduct.

WHEREFORE, Plaintiff prays for judgment and damages against Defendant Adventist Clearlake as set forth below.

## THIRD COUNT

### (RETALIATION IN VIOLATION OF HEALTH & SAFETY CODE § 1278.5)

### (Against All Defendants)

50. Plaintiff realleges and incorporates by reference every allegation contained in paragraphs 1 through 49 set forth above. This Count is alleged against all Defendants.

51. California Health and Safety Code section 1278.5 strictly prohibits a health care facility, including a facility's administrative personnel, employees, and medical staff from retaliating against a physician for reporting or complaining about issues relating to the quality of care, services and conditions at the facility. Section 1278.5, subd. (d)(2), prohibits any discriminatory action against a physician for such reports and complaints, including but not limited to suspension and an unfavorable change in privileges such as Defendants' conduct here.

52. Under Health & Safety Code § 1278.5, subd. (d)(1), an adverse action taken within 120 days of a physician's report of a patient safety issue is presumed to be retaliatory. Defendants' suspension of Dr. Kime took place only four days after Dr. Kime's report of a very serious patient safety issue on August 7, 2015, and about a month after Dr. Kime's July 2015

reports about transfer problems, and so the suspension is legally presumed to be retaliatory.  The termination of Dr. Kime's privileges took place on or about September 10, 2015, approximately a month after Dr. Kime's report of August 7, and approximately two months after his July 2015 reports.  The termination of privileges is therefore also presumed to be retaliatory.  The failure to offer Dr. Kime a hearing pursuant to California Business and Professions Code § 809 et seq. also occurred in September, 2015, and is therefore also presumed to be retaliatory.

53. By acting as described above, each of the Defendants willfully violated California Health and Safety Code section 1278.5.

54. Under California Health and Safety Code section 1278.5, subd. (f), a willful violation of Section 1278.5 is a crime.  By retaliating against Dr. Kime as described above, Defendants committed multiple criminal acts.

55. As a proximate result of Defendants' conduct, Dr. Kime suffered lost earnings, severe damage to his reputation, loss of earning capacity, substantial emotional distress, and other general damages.

56. In retaliating against Dr. Kime, Defendants acted despicably, willfully, knowingly, intentionally, maliciously, oppressively, or with conscious, wanton, or reckless disregard for his rights.  Dr. Kime is therefore entitled to an award of punitive damages against Defendants for retaliatory conduct.

57. Dr. Kime is not required to exhaust any administrative remedy before bringing an action under Section 1278.5.  He is also not required to exhaust any administrative remedy because he was never offered a hearing by Defendants.

WHEREFORE, Plaintiff prays for judgment and damages against Defendants as set forth below.

### JURY TRIAL DEMAND

58. Plaintiff hereby requests a jury trial in this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and damages against Defendants on each count of this Complaint as follows:

1. For an injunction requiring Defendants to reinstate Dr. Kime's privileges at Adventist Health Clearlake Hospital;

2. For a declaration pursuant to Business & Professions Code § 803.1, subd. (b)(6) declaring that the Defendants, and each of them, acted with bad faith in the hospital disciplinary actions taken against Dr. Kime;

3. Compensatory economic and general damages and punitive damages according to proof;

4. Prejudgement Interest on monetary damages to the extent permitted by law;

5. Attorney's fees and legal costs pursuant to California Health and Safety Code § 1278.5, subd. (g), California Business and Professions Code § 809.9, and any other statutory fee provision that may apply; and

6. For such other and further relief as this Court may deem just and proper.

Dated: August 9, 2016
Oakland, California

**JUSTICE FIRST**
Attorney for Plaintiff Ryan Kime, M.D.
By:

_____/s/ *Jenny Huang*_____
Jenny C. Huang
180 Grand Avenue, Suite 1300
Oakland, CA  94612